U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC 2 2 2008

CLERK, U.S. DISTRICT COURT
By
Deputy

ORIGINAL

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| MANCHESTER, INC. | § | Case No. 08-30703-11-BJH |
| | § | |
| Debtor. | § | 3:08-CV-1604-D |
| | § | |

| | | |
|---|---|---|
| MANCHESTER INC., NICE CARS | § | |
| OPERATIONS ACQUISITION CO., INC., | § | |
| AND NICE CARS ACCEPTANCE | § | |
| ACQUISITION CO., INC. | § | |
| | § | |
| Plaintiffs, | § | Adversary No. 08-03163-BJH |
| v. | § | |
| | § | |
| RAY LYLE AND VICTORIA LYLE, | § | |
| | § | |
| Defendants. | § | |

---

**REPORT AND RECOMMENDATION ON MOTION TO WITHDRAW REFERENCE**

Before the Court is the "Lyles' Motion to Withdraw the Reference to the Bankruptcy Court,

to Withdraw Their Proofs of Claim, and to Dismiss or Transfer This Proceeding and Brief in Support

Thereof" filed by Ray and Victoria Lyle (the "Motion"), and the Litigation Trustee's response in

opposition to the Motion (the "Response").[1]  Pursuant to Rule 5011.1 of the Local Rules for the

United States Bankruptcy Court for the Northern District of Texas (the "Local Rules"), this Court

---

[1]At the status conference on the Motion held on November 3, 2008, the parties agreed that this Court had
the authority to hear and finally determine that portion of the Motion dealing with the Lyles' request to withdraw
their proofs of claim.  In other words, the parties agreed that the issues surrounding the Lyles' request to withdraw
their proofs of claim were "core" bankruptcy issues that this Court is statutorily authorized to finally determine in
accordance with 28 U.S.C. § 157(b)(1) & (2).  Accordingly, this Court will be issuing a separate Memorandum
Opinion and Order concurrently with the issuance of this Report and Recommendation addressing the Lyles' request
to withdraw their filed proofs of claim in Manchester's bankruptcy case.

Report and Recommendation on Motion to Withdraw Reference

held a status conference with the parties on November 3, 2008, and provides this report and recommendation to the District Court in connection with that portion of the Motion relating to the requested withdrawal of the reference.

## I.   FACTUAL BACKGROUND

### A.   History Prior to the Filing of the Adversary Proceeding

The adversary proceeding now pending before this Court had its genesis several years ago. On or about October 4, 2006, Manchester, Inc. ("Manchester") and Ray and Victoria Lyle (collectively, the "Lyles") agreed that Manchester would acquire the Lyles' "buy-here-pay-here" used car business called Nice Cars, Inc. ("Nice Cars"). This acquisition was formalized pursuant to two nearly identical share purchase and exchange agreements (the "Purchase Agreements"), pursuant to which Manchester agreed to: (i) pay the Lyles, among other things, $17,820,000 in cash at closing, (ii) pay another $6,930,000 through the execution of a promissory note, and (iii) issue the Lyles approximately $25 million in restricted Manchester stock. Manchester also entered into employment agreements with the Lyles, which called for a combined salary to them of $587,584 per year for five years (the "Employment Agreements"). The total consideration called for in the Purchase Agreements and the Employment Agreements was approximately $50,000,000. In addition, the Purchase Agreements contained an exclusive forum selection clause providing that all claims arising from the Purchase Agreements were to be brought in federal district court in New York applying New York law.

On October 5, 2007, Manchester commenced an action against the Lyles in federal district court in the Southern District of New York (the "New York Action") alleging breach of the Purchase Agreements as well as several common law claims, including fraud. Manchester sought monetary

damages exceeding $50 million and contended that the Lyles had made false and misleading misrepresentations to Manchester regarding the financial condition of Nice Cars in the Purchase Agreements. Manchester filed an amended complaint in the New York Action on October 12, 2007, and then amended its complaint again on November 30, 2007 to include additional New York state law-based claims including rescission, constructive trust, indemnification, conversion, tortious interference with contract, replevin, breach of fiduciary duty, breach of the Purchase Agreements and the Employment Agreements, and breach of an alleged settlement agreement. Manchester demanded a jury trial on its claims against the Lyles.

On January 18, 2008, the Lyles moved to dismiss Manchester's then-pending complaint in the New York Action for its alleged failure to state a claim against the Lyles. Although never filed, the Lyles also claim to have intended to assert counterclaims against Manchester in the New York Action in the approximate amount of $25,000,000 for, among other things, breaches of the Purchase Agreements and the Employment Agreements, common law fraud, and defamation.

On February 17, 2008 (the "Petition Date"), Manchester filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above Chapter 11 case (the "Case").[2] Shortly thereafter, on February 28, 2008, Manchester requested, and the Lyles agreed to, a 45-day extension of time during which Manchester could respond to the Lyles' motion to dismiss the New York Action.

On April 7, 2008, Richard D. Gaines ("Gaines"), Manchester's Chief Executive Officer, purported to enter into a settlement agreement (the "Purported Settlement Agreement") with the

---

[2] Various Manchester affiliates filed their Chapter 11 cases simultaneously. Those cases were administratively consolidated with the Case.

Lyles, pursuant to which, among other things, Manchester would dismiss its claims against the Lyles in the New York Action with prejudice and allow the Lyles' claims in the Case in the amount of $9,000,000. On April 16, 2008, Manchester requested, and the Lyles agreed to, a further 60-day extension of time for Manchester to respond to the Lyle's motion to dismiss the New York Action so that the parties could obtain approval of the Purported Settlement Agreement from this Court. However, on April 24, 2008, after Gaines consulted with Manchester's bankruptcy counsel, the Lyles were advised that the Purported Settlement Agreement was rescinded (because Gaines did not have the authority to enter into that agreement without bankruptcy court approval and Manchester would not seek such approval).

On April 17, 2008, Manchester filed the Disclosure Statement for Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (the "Disclosure Statement"), along with a joint plan of reorganization under Chapter 11 for Manchester and its various affiliate debtors (the "Plan"). The Lyles objected to the Disclosure Statement and, on April 29, 2008, filed a proof of claim against Manchester in the amount of $9,917,648. This initial proof of claim was subsequently amended on April 30, 2008 to reduce the claim to $7,654,327. The Lyles' final amended proof of claim was filed on June 11, 2008 and, as amended, sought to recover $33,431,043 from the Manchester bankruptcy estate, the amount allegedly remaining unpaid under the Purchase Agreements and the Employment Agreements (the Lyles' initial claim, the amended claim, and the final amended claim shall be collectively referred to herein as the "Proofs of Claim").

On June 12, 2008, this Court confirmed the Plan, as modified (the "Confirmed Plan"). Pursuant to the Confirmed Plan, Manchester's claims against the Lyles were transferred to a litigation trust to be pursued for the benefit of Manchester's creditors, many of whose claims were

also transferred to the litigation trust. On June 23, 2008, Alex D. Moglia was appointed as the trustee of the litigation trust (the "Litigation Trustee") pursuant to the terms of the Confirmed Plan.

### B. History After the Filing of the Adversary Proceeding

On or about June 17, 2008, Manchester voluntarily dismissed the New York Action and, together with certain affiliates, initiated the above adversary proceeding No. 08-03163-BJH (the "Adversary Proceeding") against the Lyles. In the Adversary Proceeding, Manchester seeks to recover the same monetary damages arising from its purchase of Nice Cars that were previously sought in the New York Action. Manchester's adversary complaint here (the "Adversary Complaint") seeks relief on eight counts: (1) breach of the Nice Cars Agreement, (2) breach of the Nice Cars Acceptance Agreement, (3) avoidance and recovery of fraudulent transfers under 11 U.S.C. § 548, (4) avoidance and recovery of fraudulent transfers under 11 U.S.C. § 544(a) and New York state fraudulent transfer law, (5) avoidance and recovery of preferential transfers under 11 U.S.C. § 547(b), (6) subordination of claims under 11 U.S.C. § 510(b), (7) subordination of claims under 11 U.S.C. § 510(c), and (8) disallowance of claims under 11 U.S.C. § 502(d). Adversary Complaint, at pp. 14-24.

On September 11, 2008, the Lyles filed a Motion for Withdrawal of the Reference, which was subsequently amended and re-filed on September 15, 2008 as the Motion – *i.e.*, the Motion to Withdraw the Reference, combined with Motions to Withdraw Proofs of Claim and Dismiss or Transfer the Adversary Proceeding to a federal district court in the Southern District of New York pursuant to the forum selection clause contained in the Purchase Agreements. The Lyles sought a withdrawal of the reference of the Adversary Proceeding because, among other things and according to the Lyles, Manchester's claims in the Adversary Proceeding are non-core and they are entitled to

a jury trial on those claims, despite having filed the Proofs of Claim in the Case. Motion, pp. 12-19. In addition, the Lyles sought to withdraw the Proofs of Claim, if necessary in order that the reference be withdrawn. *Id.* at 19-20. Finally, based upon a forum selection clause in the Purchase Agreements, the Lyles sought a dismissal of the Adversary Proceeding or, in the alternative, a transfer of the Adversary Proceeding to a federal district court in the Southern District of New York. *Id.* at 20-22.

On October 1, 2008, the Litigation Trustee substituted in as the proper plaintiff in the Adversary Proceeding in accordance with the terms of the Confirmed Plan. The Litigation Trustee opposes a withdrawal of the reference, claiming, among other things, that (i) the Adversary Proceeding is a "core" proceeding, (ii) the Lyles waived their right to a jury trial by filing the Proofs of Claim, (iii) the Lyles are attempting to "forum shop," and (iv) uniformity and efficiency in the bankruptcy process will be served by denying a withdrawal of the reference. The Litigation Trustee also opposes a dismissal or transfer of the Adversary Proceeding.[3]

## II.   LEGAL ANALYSIS

### A.   The Standard for a Withdrawal of Reference

Rule 5011.1 of the Local Rules provides that at the status conference on a motion to withdraw the reference, the Court shall consider and determine the following:

> (a) whether any response to the motion to withdraw the reference was filed, and whether the motion was denied;
> (b) whether a motion to stay the proceeding pending the district court's decision on the motion to withdraw the reference has been filed, in which court the motion was

---

[3]And, as noted previously, the Litigation Trustee opposed allowing a withdrawal of the Proofs of Claim to the extent the withdrawal of the Proofs of Claim (i) restored the Lyles' right to a jury trial on some (or all) of the claims pending against them in the Adversary Proceeding, (ii) otherwise facilitated a withdrawal of the reference of the Adversary Proceeding, or (iii) otherwise facilitated a dismissal of the Adversary Proceeding or its transfer pursuant to the forum selection clause contained in the Purchase Agreements. These issues are addressed in the Court's separate Memorandum Opinion and Order regarding the withdrawal of the Proofs of Claim.

filed, and the status (pending, granted or denied) of the motion;

(c) whether the proceeding is core or non-core, or both and with regard to the non-core and mixed issues, whether the parties consent to entry of a final order by the bankruptcy court;

(d) whether a jury trial has been timely requested, and if so, whether the parties consent to the bankruptcy judge conducting a jury trial, and whether the district court is requested to designate the bankruptcy court to conduct a jury trial;

(e) if a jury trial has not been timely requested or if the proceeding does not involve a right to jury trial;

(f) whether the bankruptcy court has entered a scheduling order in the proceeding;

(g) whether the parties are ready for trial;

(h) whether the bankruptcy court recommends that

> (1) the motion be granted;
>
> (2) the motion be granted upon certification by the bankruptcy court that the parties are ready for trial,
>
> (3) the motion be granted but that pre-trial matters be referred to the bankruptcy court, or
>
> (4) the motion be denied; and

(i) any other matters considered by the bankruptcy court relevant to the decision to withdraw the reference.

Withdrawal of the reference is governed by 28 U.S.C. § 157(d), which provides, in relevant part, that the district court may withdraw, "in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." In *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998-99 (5th Cir. 1985), the Fifth Circuit stated that in ruling upon a motion to withdraw the reference, a court should consider several factors: (1) whether the matter involves core, non-core, or mixed issues; (2) whether or not there has been a jury demand; (3) the effect of withdrawal on judicial economy; (4) the effect of withdrawal on the goal of reducing forum shopping; (5) uniformity in bankruptcy administration; (6) the effect of withdrawal on fostering the economical use of the parties' resources; and (7) the effect of withdrawal on the goal of expediting the bankruptcy process.

**B.    Its Application Here**

As with most situations where the *Holland America* factors are analyzed, each of the seven factors is not equally instructive or probative. However, the Court will discuss each of those factors in turn.

### 1.    Core vs. Non-Core Claims

28 U.S.C. § 157(b) gives a bankruptcy judge discretion in determining whether a claim is core or non-core. If a claim is core, the bankruptcy judge court may "hear and determine" it. *See* 28 U.S.C. § 157(b)(1). A claim "is core if it arises under title 11 or arises in a case under title 11." *In re U.S. Brass Corp.*, 301 F.3d 296, 305 (5th Cir. 2002). Moreover, 28 U.S.C. § 157(b)(2) contains a non-exclusive list of matters that are core proceedings, including, as relevant here, "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2) (C).

The Adversary Proceeding, like many, involves multiple claims, some of which are arguably more "core" than others. In *In re Wood*, 825 F.2d 90, 96 (5th Cir. 1987), the Fifth Circuit was confronted with "mixed" claims – *i.e.*, both core and non-core claims. There, the plaintiff initiated a complaint against the debtors seeking to recover stocks and monies which the debtors were alleged to have misappropriated. *Id.* at 93. Although the plaintiff also raised certain Bankruptcy Code based claims, the Fifth Circuit found that those tangential claims did not constitute the "substance" of the action. *Id.* at 98. In determining which of the core and non-core claims predominated, the Fifth Circuit looked to the "essential issue" in the lawsuit. *Id.* Accordingly, the Court will analyze the eight claims pled in the Adversary Complaint to determine the core/non-core nature of each claim. If the Court concludes that the Adversary Complaint states both core and non-core claims against

the Lyles, the Court will then decide which of those claims predominate and form the "essence" of the Adversary Proceeding.

In Counts I and II, Manchester (now the Litigation Trustee) alleges that the Lyles breached the Purchase Agreements. On their face, these claims appear to be non-core as they are predicated upon the allegation that the Lyles provided Manchester with inaccurate financial information prior to the consummation of the Purchase Agreements and, in so doing, breached warranties and representations made within those agreements. Because these claims existed prior to Manchester's bankruptcy filing, and were actually pending prepetition in the New York Action, these claims, at first blush, neither "arise[] under title 11 or arise[] in a case under title 11," *In re U.S. Brass Corp.*, 301 F.3d at 305, making them appear to be non-core claims.

However, by filing the Proofs of Claim in the Case, the Lyles have implicated 28 U.S.C. §157(b)(2)(C) and have converted what would have been non-core, state law based claims into core claims. As noted previously, 28 U.S.C. §157(b)(2) contains a non-exclusive list of matters which are "core," including "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. §157(b)(2)(C). According to the Fifth Circuit, a "response to a proof of claim which is, in essence, a counterclaim, is a core proceeding under 28 U.S.C. § 157(b)(2)(C)." *See In re Baudoin*, 981 F.2d 736, 741 (5th Cir. 1993). There are "three events that must occur before a matter can be deemed a core proceeding under 28 U.S.C. §157(b)(2)(C)," specifically: (1) an entity should be in bankruptcy, (2) another entity, such as a creditor, must file a proof of claim against the estate, and (3) in response to this proof of claim, the bankruptcy estate must then file a claim against the entity who filed the original proof of claim. *Allen v. City Fin. Co.*, 224 B.R. 347, 352 (Bankr. S.D. Miss. 1998).

A debtor's adversary proceeding can be construed as a "counterclaim" to a creditor's proof of claim when "arising out of the same transaction as the [creditor's] claim." *In re Bar M Petroleum Co., Inc.*, 63 B.R. 343, 347 (Bankr. W.D. Tex. 1986). This is true even when the claims in the adversary proceeding are not specifically labeled as "counterclaims" to the creditor's proof of claim. *Id.* at 345. Instead of looking at the label used by the parties, the court should look to the degree of inter-relatedness between the two claims because "courts have traditionally permitted bankruptcy courts to assert jurisdiction over counterclaims by a trustee only when there exists some connection between the [proofs of] claims of the creditor and those of the trustee." *Id.* at 347 (citing to *Macon Prestressed Concrete Co. v. Duke*, 46 B.R. 727, (Bankr. M.D. Ga. 1985)(later overruled on other grounds in *Tidwell v. Omni Petroleum*, 164 B.R. 188 (Bankr. M.D. Ga. 1994)). *See also In re Mktg. Res. Int'l Corp.*, 43 B.R. 71, 72 (Bankr. E.D. Pa. 1985) (holding that by filing a proof of claim, the bankruptcy court had "jurisdiction to address all claims brought by the debtor against [the creditor]" under 28 U.S.C. § 157(b)(2)(C)). Finally, if a creditor's proof of claim is so inter-related to the claims underlying a debtor's adversary proceeding as to be considered a counterclaim, the "fact that the [bankruptcy] Court's determination will depend upon State law does not [deprive the bankruptcy court of jurisdiction]." *In re Bar M Petroleum*, 63 B.R. at 346.

Here, the breach of contract claims pled in Counts I and II of the Adversary Complaint "arise from the same transaction" as the claims asserted by the Lyles in the final amended Proof of Claim. Specifically, in Counts I and II, Manchester (now the Litigation Trustee) alleges that the Lyles breached the Purchase Agreements, by, among other things, making false representations and warranties to Manchester in the Purchase Agreements. Adversary Complaint, at 15-16. This allegation is clearly a counterclaim to the final amended Proof of Claim filed by the Lyles on June

11, 2008, which seeks to recover damages from Manchester's bankruptcy estate for Manchester's alleged breach of the same Purchase Agreements (along with the related Employment Agreements). And, the fact that the breach of contract claims pled in Counts I and II are rooted in state law does not, by itself, deprive this Court of jurisdiction because a "[t]rustee's claim, based on State Law, 'procedurally characterized' as a counterclaim to a creditor's proof of claim, may be finally determined by [the bankruptcy] Court in the process of determining whether the creditor's [proof of] claim should be allowed." *In re Bar M Petroleum*, 63 B.R. at 347.

Because this Court finds that (1) the issues raised in the final amended Proof of Claim and the Adversary Proceeding arise from the same transaction, and (2) the determination of the validity of the Lyles's claim against Manchester and Manchester's (now the Litigation Trustee's) claims against the Lyles requires interpretation of the same agreements, this Court concludes that the Count I and II claims as pled in the Adversary Complaint are properly characterized as counterclaims to the final amended proof of claim filed by the Lyles in the Case.[4] As such, under 28 U.S.C. § 157(b)(2)(C), Counts I and II are core claims, and the Court is authorized to "hear and determine" them – *i.e.*, enter a final judgment – in accordance with 28 U.S.C. § 157(b)(1).

In Counts III and IV, Manchester (now the Litigation Trustee) alleges that various prepetition transfers are avoidable fraudulent transfers. Moreover, in Count V, Manchester (now the Litigation Trustee) alleges that various prepetition transfers are avoidable preferences. These claims are core claims in accordance with 28 U.S.C. § 157(b)(2)(F) & (H), and the Court is authorized to enter a final judgment with respect to these claims.

---

[4]*See also In re Lombard-Wall, Inc.*, 48 B.R. 986, 991 (Bankr. S.D. N.Y. 1985), which found that the issues underlying the proof of claim and the adversary proceeding were "logically connected" such that "judicial economy and fairness dictate they be decided in the same forum."

In Counts VI and VII, Manchester (now the Litigation Trustee) seeks to subordinate the Proofs of Claim to the claims of other creditors in the Case. Moreover, in Count VIII, Manchester (now the Litigation Trustee) seeks to disallow the Proofs of Claim. While these claims are core claims in accordance with 28 U.S.C. § 157(b)(2)(B), these claims will be moot if this Court grants the Lyles' motion to withdraw the Proofs of Claim.

For these reasons, this Court concludes that all of the claims pled in the Adversary Proceeding are core. Accordingly, this factor weighs in favor of denying a withdrawal of the reference.

### 2.    Existence of a Jury Demand

The Adversary Proceeding is in its infancy. While the Lyles have not yet demanded a jury, neither have they been required to file their answer to the Adversary Complaint. Moreover, the Lyles advise that they intend to demand a jury trial when they are required to file their answer (assuming their motion to dismiss is not granted). For purposes of its analysis here, the Court will assume that the Lyles will ultimately demand a jury trial in the Adversary Proceeding.

As noted previously, the Lyles filed their original proof of claim in the Case in April 2008 and their final amended proof of claim on June 11, 2008. In the final amended proof of claim, the Lyles sought to recover approximately $33.4 million from Manchester's bankruptcy estate due to Manchester's alleged breach of the Purchase Agreements and the Employment Agreements. So, the question becomes, did the Lyles subject themselves to the equitable jurisdiction of this Court on the claims asserted against them in the Adversary Proceeding by filing the Proofs of Claim in the Case? For the reasons explained more fully below, this Court concludes that the Lyles did subject themselves to this Court's equitable jurisdiction with respect to Manchester's (now the Litigation

Trustee's) claims against them when they filed the Proofs of Claim and asked to participate in distributions from the Manchester bankruptcy estate due to Manchester's alleged breaches of the Purchase Agreements and/or the Employment Agreements. Accordingly, the Lyles have no right to a jury trial on these claims.

As a preliminary matter, this Court notes that the Supreme Court has consistently held that the "right of [a] jury trial is fundamental, [and] courts indulge every reasonable presumption against waiver." *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937). Furthermore, the Supreme Court has held that "any waiver of constitutional rights must be voluntarily, intelligently, and knowingly made." *Fuentes v. Shevin*, 407 U.S. 67, 94-95 (1972).

However, a party may "either implicitly or explicitly waive its Seventh Amendment right to a jury trial." *In re Clay*, 35 F.3d 190, 196 (5th Cir. 1994). In addition, "a party may have a legal claim, to which the right to a jury attaches converted into an equitable claim by participating in the bankruptcy process, thereby losing the jury trial right." *In re Capital Assoc. Int'l, Inc.*, 2003 Bankr. LEXIS 931, at *16-*18 (Bankr. N.D. Tex. Aug. 6, 2003)(quoting *Langencamp v. Culp*, 498 U.S. 42, 44-5 (1990)). Parties are often found to have "waived"[5] their jury trial right by submitting themselves to the equity jurisdiction of a bankruptcy court "through the conversion of [their] legal claim into an equitable claim if the proceeding invokes the: (1) claims allowance or disallowance process; (2) the hierarchical ordering of creditor's claims; or (3) if the dispute is integral to the

---

[5]While many courts use "waiver" language in their decisions, that language is imprecise given relevant Supreme Court precedent. The Supreme Court does not speak in terms of a jury trial right being "waived" by the filing of a proof of claim; rather, the Supreme Court speaks in terms of the equity jurisdiction or power of bankruptcy courts being triggered by the filing of a proof of claim in a bankruptcy case, thereby causing the loss of a jury trial right. *See Langenkamp v. Culp*, 498 U.S. 42 (1991) (holding that a creditor who files a claim against the bankrupt and then is sued by the trustee in an avoidance action becomes subject to the equity jurisdiction of the bankruptcy court where there is no right to a jury trial); *Granfinanciera v. Nordberg*, 492 U.S. 33, 58 (1989) (recognizing that by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power).

restructuring of the debtor-creditor relationship." *Granfinanciera v. Nordberg*, 492 U.S. 33, 58 (1989); *In re Jensen*, 946 F.2d 369, 374 (5th Cir. 1991). Specifically, after a creditor files a proof of claim in a bankruptcy proceeding, the "creditor per se loses a jury right he might otherwise have had." *In re Capital Assoc., Int'l, Inc.*, 2003 Bankr. LEXIS 931, at *18 (citing to *Langenkamp*, 498 U.S. at 44). *See also In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1372 (Fed. Cir. 1999)(holding that "[o]nce a party invokes the core jurisdiction of the bankruptcy court by filing a proof of claim, that party has no Seventh Amendment right to a jury trial."); *Travellers Int'l AG v. Robinson*, 982 F.2d 96, 99 (3d Cir. 1992) (holding that once a creditor files a proof of claim, the creditor has "submitted to the bankruptcy court's equitable jurisdiction and waived any Seventh Amendment right to a jury trial."); *In re Alvardo*, 2008 Bankr. LEXIS 815, at *9-10 (Bankr. W.D. Tex. 2008)(holding that Seventh Amendment jury trial right on intertwined issues forfeited by filing of proof of claim); *In re Mindeco Corp.*, 212 B.R. 447, 450-51 (Bankr. E.D. N.Y. 1997))(noting that while the Supreme Court's *Granfinanciera* and *Langenkamp* decisions addressed the loss of jury trial rights in fraudulent conveyance and preference claims, lower courts have "gradually expanded the *Granfinanciera/Langenkamp* rationale" to augment the list of creditor actions which constitute a "relinquishment of the right to a jury trial.").

In support of their argument that the filing of the Proofs of Claim in the Case did not cause them to lose their right to a jury trial on the claims pled against them in the Adversary Complaint, the Lyles rely heavily on *In re Mirant*, 337 B.R. 107, 121 (N.D. Tex. 2006), in which the district court concluded that the filing of a proof of claim does not automatically forfeit the filer's right to

a jury trial.[6]  *See also In re British Am. Props. III, Ltd.,* 369 B.R. 322, 331-32 (Bankr. S.D. Tex. 2007)(finding the reasoning used in *Mirant* "persuasive" and concluding that it "should govern the analysis of the jury trial issue" there).  In deciding that the jury trial right was not lost upon the filing of a proof of claim, the *Mirant* court noted that the subject matter of the adversary proceeding was distinct from the proof of claim, and that "determinations of the legal claims in [the adversary proceeding which the moving party sought to have tried in front of a jury] simply will not directly implicate the bankruptcy claim resolution process."  *Id.  See also Germain v. Connecticut Nat'l Bank,* 988 F.2d 1323, 1329-30 (2d Cir. 1993) (explaining that "[f]or a waiver to occur, the dispute must be part of the claims-allowance process or affect the hierarchical reordering of creditors' claims.  Even there the right to a jury trial is lost not so much because it is waived, but because the legal dispute has been transformed into an equitable issue.").

At a minimum, *Mirant* is distinguishable.[7]  The *Mirant* court found that the "[r]esolution of the legal claims raised in this action will not directly affect the liability or priority of Southern's proofs of claim in the bankruptcy cases," and thus did "not directly implicate the bankruptcy claim resolution process."  *In re Mirant,* 337 B.R. at 121.  Here, in sharp contrast, the claim asserted by the Lyles in the final amended proof of claim is, in every respect, the opposite side of the issues raised by Manchester (now the Litigation Trustee) in the Adversary Complaint.  In other words, in their

_____

[6] The *Mirant* court cited to *In re Bryant,* 626 F.2d 492, 494 (5th Cir. 1980), which held that "the filing of a proof of claim does not in itself constitute a waiver of an objection to summary jurisdiction."  *Bryant,* however, was decided under the Bankruptcy Act, prior to the effective date of the Bankruptcy Code and prior to the Supreme Court's decisions in *Granfinanciera* and *Langenkamp.*  It is unclear whether the Fifth Circuit would agree with *Bryant*'s conclusion today, especially in light of these more recent Supreme Court decisions.  Although not expressly addressed, the extent of the continuing validity of *Bryant* is also unclear given the court's analysis in *In re Jensen,* 946 F.2d 369, 374 (5th Cir. 1991), in which the court agreed with a sister circuit's result in another case but not its reasoning, concluding instead that "[f]iling a proof of claim denied both the plaintiff and the defendant...any right to jury trial that they otherwise might have had on that claim."

[7] The *Mirant* court's analysis is criticized by the *Alvarado* court, 2008 Bankr. LEXIS 815, at * 9, n.5.

final amended proof of claim, the Lyles assert the right to recover approximately $33.4 million from Manchester's bankruptcy estate due to Manchester's alleged breach of the Purchase Agreements and the Employment Agreements. The Purchase Agreements allegedly breached by Manchester are the same Purchase Agreements that Manchester (now the Litigation Trustee) alleges that the Lyles breached in the Adversary Complaint. By asking this Court to determine that Manchester breached the Purchase Agreements and the Employments Agreements in seeking the allowance of the Proofs of Claim, the Lyles consented to this Court deciding who, if anyone, breached those agreements – *i.e.*, the Lyles (as Manchester (now the Litigation Trustee) contends) or Manchester (as the Lyles contend). Moreover, if the Lyles are correct that Manchester breached the Purchase Agreements and the Employment Agreements, causing the Lyles to be entitled to recover the amounts still owing to them under those agreements, it is highly unlikely that the Litigation Trustee could successfully avoid prior transfers to the Lyles under those same agreements as pled in Counts III-V of the Adversary Complaint. Similarly, unlike the situation confronted by the Second Circuit in *Germain*, the resolution of the dispute at the center of the Proofs of Claim – *i.e.* who breached the agreements underlying Manchester's purchase of Nice Cars – is not "only incidentally related to the bankruptcy process." *Germain*, 988 F.2d at 1329-30.

Due to the intertwined nature of the factual and legal assertions in both the Proofs of Claim and the Adversary Proceeding, this Court concludes that by filing the Proofs of Claim and requesting the allowance of their $33.4 million damage claim against the Manchester bankruptcy estate for Manchester's alleged breach of the Purchase Agreements and the Employment Agreements, the Lyles submitted themselves to the equitable jurisdiction of this Court, thereby losing any right to a jury trial they may have had on Manchester's inter-related claims against them.

So, the question then becomes, what effect, if any, does the granting of the Lyles' motion to withdraw the Proofs of Claim have on the Lyles' jury trial right? Or, stated another way, can a creditor who has lost its right to a jury trial by filing a proof of claim in a bankruptcy case have its jury trial right restored through the withdrawal of that proof of claim pursuant to Federal Rule of Bankruptcy Procedure 3006 *after* having been sued in the bankruptcy court on interrelated claims? For the reasons explained more fully below, this Court concludes that the answer to this question is no. Accordingly, withdrawal of the Proofs of Claim does not restore any jury trial right the Lyles may have enjoyed prior to the filing of the Proofs of Claim on the interrelated claims asserted against them in the Adversary Complaint.

This issue was addressed in *In re EXDS, Inc.*, 301 B.R. 436 (Bankr. D. Del. 2003), where the creditor (who later sought reinstatement of its jury trial right) filed a proof of claim in the bankruptcy case. After the claim was filed, the debtor filed an adversary proceeding against the creditor. And, subsequent to the filing of the adversary proceeding, the creditor sought to (1) withdraw its proof of claim, and then (2) obtain a jury trial with respect to the issues raised in the adversary proceeding. *Id.* In concluding that the withdrawal of a proof of claim would not restore a right to jury trial, the *EXDS* court stated:

> Given the clear directive of *Langenkamp*, I do not believe it makes any difference on the jury trial issue whether I authorize RK to withdraw its proof of claim. At the time of the filing of the adversary complaint, RK was subject to the jurisdiction of this court where there is no right to a jury trial. In the words of *Langenkamp*, RK submitted itself to the 'claims-allowance process' of the equity court. Stated differently, in the words of the *Travellers* opinion, RK lost its right to a jury trial because it elected to participate in the equity court proceeding. Given the unequivocal language of *Langenkamp* and *Travellers* as to the effect of filing a proof of claim, I do not believe that a creditor can, for strategic reasons, reverse the result it triggered by filing a proof of claim by later withdrawing the claim.

*Id.* at 440.

The facts here are virtually identical. The Lyles filed the Proofs of Claim in the Case; Manchester then filed the Adversary Complaint, which states claims against the Lyles that arise out of the same transaction as that underlying the Proofs of Claim; the Lyles then sought leave to withdraw the Proofs of Claim, which was granted by this Court due to the Litigation Trustee's failure to show a legal harm or prejudice from withdrawal of the Proofs of Claim;[8] with the Lyles now claiming that their right to a jury trial on the claims pled in the Adversary Complaint remains intact or was restored by the withdrawal of the Proofs of Claim.

The Court disagrees with the Lyles. Like diversity jurisdiction, which depends on the citizenship of the parties at the time suit is filed, *see Anderson v. Watt*, 138 U.S. 694, 702-03 (1891)(holding that "the [jurisdictional] inquiry is determined by the condition of the parties at the commencement of the suit"); *Minneapolis & S.L.R. Co. v. Peoria & P.U.R. Co.*, 270 U.S. 580, 586 (1926)(holding that "the jurisdiction of the lower court [in diversity cases] depends upon the state of things existing at the time the suit was brought"), the Lyles' jury trial right should generally be analyzed at the time of the filing of the Adversary Proceeding. *In re EXDS, Inc.*, 301 B.R. at 441(applying the logic of *Anderson* and *Minneapolis & S.L.R. Co.* to an adversary proceeding, finding that "when the [adversary proceeding] complaint was filed, [the creditor] had already subjected itself to the jurisdiction of this bankruptcy court"). At that time, the Lyles were subject to the equitable power of this Court to determine the validity of their filed claims against the Manchester bankruptcy estate. Because the claims pled in the Adversary Complaint arise from the same transaction as that underlying the Proofs of Claim, the Lyles are subject to this Court's equitable jurisdiction with respect to all of those claims.

---

[8]*See* Memorandum Opinion and Order entered concurrently with this Report and Recommendation, pp. 6-12.

Moreover, from this Court's perspective, parties-in-interest in a bankruptcy case cannot be permitted to manipulate the bankruptcy process in such a fashion. The Lyles made a conscious decision to participate in the bankruptcy process – first, by filing the Proofs of Claim and seeking to recover from Manchester's bankruptcy estate for Manchester's alleged breach of the agreements underlying Manchester's purchase of Nice Cars; and second, by participating in the plan of reorganization process – *i.e.*, by objecting to the adequacy of information contained in the Disclosure Statement and to confirmation of the Plan. After voluntarily choosing to participate in the bankruptcy process and subjecting themselves to the equitable jurisdiction of this Court, the Lyles cannot be permitted to simply say "never mind," and act as if those prior acts had not occurred. The Lyles chose to subject themselves to the equitable jurisdiction of this Court and they cannot simply walk away now for strategic reasons.

The policy ramifications of an opposite conclusion are simply untenable. Creditors should not be able to fully participate in the bankruptcy process – potentially lengthening that process and increasing the associated administrative expense of that process – and then, when strategically convenient, simply act as if their involvement in the bankruptcy case was unintended or inadvertent. There are costs associated with involvement in a bankruptcy process. With respect to a decision to file a proof of claim in a bankruptcy case, the cost is subjecting yourself to the equitable jurisdiction of the bankruptcy court, at least with respect to the issues underlying that proof of claim. The Lyles intentionally participated in Manchester's bankruptcy case and they must now bear the associated "burden" of their decision to so participate.

Finally, the time-line of occurrences in both this case and *EXDS*, renders them readily distinguishable from cases like *Smith v. Dowden*, 47 F.3d 940, 943-44 (8th Cir. 1995), where the

Eighth Circuit found that a creditor had preserved its jury trial rights in an adversary proceeding, even after filing a proof of claim, because the creditor obtained the court's permission to withdraw its proof of claim *before* the adversary proceeding was ever filed. *Id.* at 943. That outcome makes sense because the creditor withdrew from the bankruptcy process before it knew that the debtor had claims against it. Here, the Lyles were well aware of Manchester's claims against them when they chose to file the Proofs of Claim (because Manchester had asserted those claims in the New York Action prepetition). Notwithstanding this knowledge, the Lyles decided to go ahead and file the Proofs of Claim, thereby asking this Court to adjudicate the dispute between the parties regarding who breached the Purchase Agreements (and the related Employment Agreements).

For all of these reasons, this Court concludes that (1) by filing the Proofs of Claim, the Lyles subjected themselves to the equitable jurisdiction of this Court and any right to a jury trial the Lyles may have enjoyed with respect to the claims pled in the Adversary Complaint was forfeited, and (2) the withdrawal of the Proofs of Claim does not change this conclusion. In short, the Lyles are not entitled to a jury trial with respect to the core claims pled in the Adversary Complaint.

Accordingly, this factor weighs against a withdrawal of the reference.

### 3. Effect of Withdrawal on Judicial Economy

A withdrawal of the reference will not promote judicial economy. This Court has core jurisdiction over all of the claims pled in the Adversary Complaint, and is statutorily authorized to hear and determine those claims. 28 U.S.C. § 157(a)(1). It should be permitted to do so.

Accordingly, this factor weighs against a withdrawal of the reference.

### 4. Effect of Withdrawal on the Goal of Reducing Forum Shopping

It does appear that the Lyles are attempting to forum shop by seeking a withdrawal of the

reference on the claims asserted against them by Manchester after they filed the Proofs of Claim in the Case. Allowing a withdrawal of the reference on core claims in a bankruptcy case will not facilitate the goal of reducing forum shopping.

Accordingly, this factor weighs against a withdrawal of the reference.

### 5. Uniformity in Bankruptcy Administration

As noted previously, the Plan was confirmed in the Case several months ago. Moreover, the Confirmed Plan has been substantially consummated. All property of the bankruptcy estate has either revested in the Reorganized Debtor, 11 U.S.C. § 1141(b), or was transferred to the Litigation Trust under the terms of the Confirmed Plan. In short, Manchester's bankruptcy case is substantially concluded.

While the Litigation Trustee asserts that uniformity in bankruptcy administration will be facilitated by the retention of the Adversary Proceeding here (because he may pursue other avoidance actions against other parties here), that argument is both speculative and simply "lawyer talk," as the Litigation Trustee failed to introduce any evidence to support this contention.

Accordingly, this factor is not material to a decision regarding withdrawal of the reference – one way or the other.

### 6. Effect of Withdrawal on Fostering the Economical Use of the Parties' Resources

This factor is also neutral. The Adversary Complaint can be tried promptly and efficiently in either the bankruptcy court or the district court. While the Litigation Trustee asserts that it will be more economical for him to litigate here because he may decide to pursue other avoidance actions against other parties here, as noted above, that argument is both speculative and simply "lawyer talk," as the Litigation Trustee failed to introduce any evidence to support this contention.

Accordingly, this factor is not material to a decision regarding withdrawal of the reference – one way or the other.

### 7.      Effect of Withdrawal on the Goal of Expediting the Bankruptcy Process

This factor is also neutral. Because the Case is essentially concluded, *see supra* at pp. 4-5, there is no bankruptcy process to hinder or delay by a withdrawal of the reference.

In sum, because all of the *Holland America* factors are either neutral or weigh against a withdrawal of the reference, this Court recommends that the reference of the Adversary Proceeding not be withdrawn.

## III.    CONCLUSION

For all of these reasons, this Court respectfully recommends that the reference of the Adversary Proceeding not be withdrawn. As noted previously, this Court will be authorizing the Lyles' withdrawal of the Proofs of Claim pursuant to a Memorandum Opinion and Order entered concurrently with this Report and Recommendation. *See supra* at p. 2, n1. Finally, with respect to the Lyles' motion to dismiss or transfer the Adversary Proceeding to the Southern District of New York, that portion of the Motion will be abated pending the District Court's decision on the requested withdrawal of the reference. In other words, if the District Court agrees with this Report and Recommendation and concludes that a withdrawal of the reference is not appropriate, then this Court will proceed to determine the motion to dismiss or transfer. Alternatively, if the District Court disagrees with this Report and Recommendation and concludes that a withdrawal of the reference is appropriate, the District Court will need to determine whether it is appropriate to dismiss the Adversary Proceeding or transfer it to the Southern District of New York pursuant to the forum

selection clause in the underlying agreements.[9]

Respectfully submitted,

*Barbara J. Houser*

Barbara J. Houser
Chief United States Bankruptcy Judge

---

[9]This Court stands ready to make a recommendation regarding dismissal or transfer under that circumstance if requested to do so by the District Court.